UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60384-MORENO/STRAUSS

RENZO BARBERI,

      Plaintiff,

v.

KERALA CORP., *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law ("Defendants' MSJ") [DE 56], and Plaintiff's Renewed Motion for Summary Judgment and Memorandum in Support Thereof ("Plaintiff's MSJ") [DE 59]. The motions were referred to me to submit a report and recommendation in accordance with 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules for the Southern District of Florida [DE 62]. I have reviewed the motions and all pertinent portions of the record.[1] For the reasons discussed herein, I respectfully **RECOMMEND** that Defendants' MSJ [DE 56] be **GRANTED** and that Plaintiff's MSJ [DE 59] be **DENIED**, with this case being **DISMISSED without prejudice** for lack of standing, or alternatively, with summary judgment being entered in favor Defendants.

---

[1] Among other filings, I have reviewed the briefing on Defendants' MSJ [DE 56, 73, 83], the statements of facts related to Defendants' MSJ [DE 57, 72, 82], the briefing on Plaintiff's MSJ [DE 59, 63, 77], the statements of facts related to Plaintiff's MSJ [DE 58, 64, 76], the briefing on Plaintiff's motion for judicial notice [DE 79, 84, 85], the briefing on Defendants' motion to exclude Plaintiff's expert [DE 55, 74, 81], all exhibits to the foregoing docket entries, and all other filings from this case that are referred to in the foregoing docket entries [*e.g.*, DE 22-1, 34-1].

## BACKGROUND

Plaintiff filed his Complaint [DE 1] on February 21, 2020, seeking declaratory and injunctive relief against Defendants based upon alleged violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*. Plaintiff, a disabled ADA tester who requires the use of a wheelchair and who resides in Miami-Dade County, Florida [DE 34-1 ¶¶ 2, 3, 6], alleges that the violations are present at a Mobil gas station and convenience store, located at 5950 Sheridan Street, Hollywood, Florida 33021 ("Property"), that Defendants own, lease, and/or operate [*see* Complaint ¶ 5]. Defendants acknowledge that Defendant Kerala Corporation ("Kerala") operates the business on the Property and that Defendant 7-Eleven, Inc. ("7-Eleven") owns the Property [DE 64 ¶ 2].

In all, Plaintiff alleges eleven ADA violations [Complaint ¶ 15]. Ten of the alleged violations relate to the presence, or lack thereof, of an ADA-compliant accessible parking space with an accessible route to the store entrance (including alleged striping/painting, signage, and access aisle and route issues). The last alleged violation pertains to the inside service counter.

Plaintiff, who visited the Property around June 2019 [DE 34-1 ¶ 4], has submitted a declaration (dated August 12, 2020) asserting that he "personally encountered *and/or* ha[s] personal knowledge of the" eleven violations alleged in the Complaint (listing each alleged violation out verbatim from the Complaint). [*Id.* ¶ 7] (emphasis added). Additionally, Plaintiff relies on a declaration and attached report from his expert, Jon Kronillis (who Defendants have separately moved to exclude), wherein Mr. Kronillis states that he preliminarily inspected the Property on July 22, 2019 and that the same eleven violations were present (also listing each one). [DE 22-1 at pp.1-2, 5-6]. The two declarations (and the Kronillis report) constitute the only summary judgment evidence Plaintiff offers in support of Plaintiff's MSJ (though he belatedly

attempts to introduce other evidence, through the avenue of a motion for judicial notice [DE 79], in connection with his reply).

In Plaintiff's declaration, in addition to listing the same barriers alleged in the Complaint and set forth in the earlier Kronillis report, Plaintiff attempts to establish standing by stating, *inter alia*, that he wanted to purchase gas and beverages but was unable to do so because of the alleged barriers [DE 34-1 ¶¶ 5, 7]. However, the declaration does not provide any further explanation regarding how any of the alleged barriers specifically affected Plaintiff's ability to purchase gas or beverages [*see generally id.*]. Plaintiff also attempts to explain why he will supposedly suffer future injury if the alleged barriers are not remedied [*see id.* ¶¶ 8-10]. Though his statements to establish future injury are, by and large, generalized and not fact-specific, Plaintiff does state that he lives approximately thirty minutes away from the Property and that he regularly visits the area near the Property, including the nearby Hard Rock Casino where he frequently has dinner and socializes [*Id.* ¶ 9].

In seeking summary judgment, and in opposing Plaintiff's MSJ, Defendants rely on transcript excerpts from Plaintiff's October 8, 2020 deposition [DE 57-1].[2] I have reviewed these excerpts in their entirety. Paragraphs 2 and 3 of Defendants' Statement of Undisputed Material Facts [DE 57] set forth what Defendants assert are facts established by Plaintiff's deposition testimony. Paragraph 2 addresses Plaintiff's evidence (or, rather, lack thereof) of having suffered an injury, whereas paragraph 3 addresses whether he is likely to suffer such an injury in the future. Plaintiff disputes both paragraphs [DE 72]. Paragraph 2, citing to multiple pages of the deposition transcript, provides that "Plaintiff admits he cannot specifically recall any of his visits to the Store, any of the alleged barriers, or how any of the claimed barriers impacted him." [DE 57 ¶ 2].

---

[2] All references herein to "T. [page number]" refer to the transcript pages included in DE 57-1.

Notwithstanding Plaintiff's attempt to dispute this statement [DE 72 ¶ 2] – an attempt unaccompanied by any citations to the record – it is accurate. The sole change that would make it even more accurate would be to add "any details of" after "cannot specifically recall."

With respect to paragraph 3 and Plaintiff's response thereto, though neither is inaccurate *per se*, the accuracy of these statements is less obvious. *Compare* DE 57-1 ¶ 3 ("The Store is not close to Plaintiff's home and Plaintiff has no concrete plans to return to the property." (citations omitted)), *with* DE 72 ¶ 3 ("Disputed. Plaintiff actually testified that he lived in the area for many, many years, and that he visits the area often. Plaintiff also testified that he plans to travel to the area soon, and plans to visit the Property again including to check whether the Property is in compliance." (citations omitted)). As to the first part of Defendants' statement, whether the store is "close" is subjective. The only evidence before the Court regarding the distance between Plaintiff's home and the Property is Plaintiff's sworn statement and deposition testimony that he lives approximately thirty minutes away from the Property [DE 34-1 ¶ 9; T. 22]. As to the second part of the statement (regarding concrete plans to return), Plaintiff did testify that he did not have a specific date on which he planned to return to the area, but Plaintiff is correct that he did state, at his deposition, that he plans to return to the area "soon." *See* T. 60 ("I don't have a specific date. Soon."). In any event, the relevant facts and deposition testimony are discussed in further detail below.

### SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313

4

(11th Cir. 2007) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (internal quotation marks omitted) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* (citing *Celotex*, 477 U.S. at 322-23). *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (The movant may satisfy its burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." (citing *Celotex*, 477 U.S. at 325)). Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311-12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. 242). Nevertheless, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light

5

most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). Moreover, all reasonable doubts regarding the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

## ANALYSIS

Title III of the ADA "prohibits discrimination by private entities in places of public accommodation." *Gathright-Dietrich v. Atl. Landmarks, Inc.*, 452 F.3d 1269, 1272 (11th Cir. 2006). *See also Houston v. Marod Supermkts., Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) ("Title III of the ADA addresses 'Public Accommodations and Services Operated by Private Entities.'"). As set forth in Title III, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Thus, one bringing a Title III ADA claim must show that "(1) he is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA." *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) (citing § 12182(a)).

The first two elements are not at issue in this case. With respect to the third element, discrimination under Title III includes the failure to remove architectural barriers "where such removal is readily achievable." *Houston*, 733 F.3d at 1326 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).[3] The Eleventh Circuit has recognized:

---

[3] This standard applies to barriers "in existing facilities." *Id.* While neither party directly addresses whether the subject property is an "existing facility," this does not appear to be an issue as both parties use this standard.

> [T]he plaintiff has the initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is "readily achievable," i.e., "easily accomplishable and able to be carried out without much difficulty or expense" under the particular circumstances of the case. If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "readily achievable."

*Kennedy v. Omegagas & Oil, LLC*, 748 F. App'x 886, 893 (11th Cir. 2018) (quoting *Gathright-Dietrich*, 452 F.3d at 1273).

Both summary judgment motions address whether Plaintiff has standing to pursue this case. Both motions also dispute whether removal of the alleged architectural barriers is readily achievable. However, whether architectural barriers exist is only disputed for purposes of Plaintiff's MSJ. In other words, in Defendants' MSJ, Defendants argue that they are entitled to summary judgment for two separate reasons – Plaintiff lacks standing and the removal of architectural barriers is not readily achievable. While both issues are also raised in Defendants' response to Plaintiff's MSJ, Defendants also argue in their response that Plaintiff has not demonstrated his entitlement to summary judgment for a third reason – he failed to provide sufficient evidence to show that architectural barriers even exist. Nevertheless, it is not necessary to reach the issue of whether the alleged barriers exist because, even if they do, Defendants should prevail on both arguments raised in Defendants' MSJ (the standing and readily-achievable arguments).

Whether the removal of the alleged architectural barriers (assuming they exist) is readily achievable, is discussed in Part II below. However, the Court must first address the issue of standing, which is in dispute. *See DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) ("Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." (citation and alteration omitted)).

## I.      STANDING

This case should be dismissed for lack of standing because Plaintiff  has failed to demonstrate both a past injury and a threat of future injury.[4]  "Standing is a jurisdictional inquiry, and a 'party invoking federal jurisdiction bears the burden' of establishing that he has standing to sue." *Am. Civil Liberties Union of Fla., Inc. v. Dixie Cnty., Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  A plaintiff "must satisfy three requirements to have standing under Article III of the Constitution: (1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'"  *Houston*, 733 F.3d at 1328 (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).  Because Plaintiff "seeks injunctive relief, which is the only form of relief available to plaintiffs suing under Title III of the ADA," he must show not only past injury to have standing, but also "a real and immediate threat of future injury."  *Id.* at 1328-29 (citations omitted).  In other words, a threat of future injury that is "merely conjectural or hypothetical" will not suffice.  *Id.* at 1329 (quoting *Shotz*, 256 F.3d at 1081; *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)).

Here, Defendants raise a factual challenge to standing.  Therefore, unlike a situation involving a facial challenge to standing, where a court resolves the jurisdictional issue based on the allegations of the complaint, the Court here may "consider extrinsic evidence such as deposition testimony and affidavits."  *Id.* at 1335-36 (citation omitted).  "In so doing, [the] [C]ourt is 'free to weigh the facts' and is 'not constrained to view them in the light most favorable' to the

---

[4] "The grant of summary judgment for lack of subject-matter jurisdiction is treated as a dismissal under Federal Rule of Civil Procedure 12(b)(1)."  *Kennedy v. Cape Siesta Motel, LLC*, No. 6:17-CV-537-Orl-40DCI, 2018 WL 4822479, at *4 n.12 (M.D. Fla. Oct. 4, 2018) (citing *Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*, 709 F.3d 1055, 1058 (11th Cir. 2013)).

plaintiff." *Id.* at 1336 (citation omitted).[5]  The record evidence the parties rely upon in connection with the present standing challenge are Plaintiff's declaration [DE 34-1] and the excerpts from Plaintiff's deposition transcript [DE 57-1].

### A. Past Injury

Having considered the relevant record evidence, I find that Plaintiff has failed to establish that he suffered a concrete injury.  His attempt to demonstrate a past injury is based upon his contention that he is a disabled individual confined to a wheelchair who "visited the Property and encountered architectural barriers in violation of the ADA" [DE 73 at pp. 5-6].  The evidence makes clear that Plaintiff is disabled and that he uses a wheelchair.  It is also undisputed that he visited the Property, though what, if anything, occurred during that visit is entirely unclear from the evidence.  Assuming the alleged barriers exist, it seems likely they would affect someone with Plaintiff's disability who *actually encounters* them.  But Plaintiff has failed to provide any probative evidence showing that he actually encountered any of the alleged barriers.

It is not entirely clear the extent to which a plaintiff has standing to challenge all alleged ADA violations at a facility when he has only personally encountered a subset of those violations. *Cf. Norkunas*, 444 F. App'x at 416 (rejecting the contention that "the ADA allows for standing to bring an entire facility into compliance once one barrier is encountered.").  But even if a plaintiff

---

[5] In some circumstances, courts nonetheless apply a summary judgment standard to a factual challenge to standing, dismissing only if undisputed facts show that the plaintiff lacks standing. *Gomez v. Dade Cnty. Fed. Credit Union*, 610 F. App'x. 859, 863 (11th Cir. 2015).  However, even if that standard applies, Plaintiff still cannot establish standing.  As described below, this finding is not based on choosing between versions of disputed facts.  Rather, the problem is that Plaintiff has failed to produce sufficient evidence in the first instance.  On the issue of past injury, given the conclusory statements in his declaration, combined with the complete lack of memory reflected in his deposition, Plaintiff's "evidence" amounts, at best, to a mere scintilla.  As to future injury, Plaintiff's testimony is undisputed yet still insufficient to establish a real and immediate threat of future injury.

does not necessarily need to have personally encountered every barrier he seeks to remedy, he surely must have encountered at least some of the barriers.[6]

The sole evidence Plaintiff points to in support of his contention that he encountered the barriers is his conclusory statement in his declaration that he "personally encountered *and/or* ha[s] personal knowledge of the" eleven violations alleged in the Complaint, essentially reciting those violations verbatim from the Complaint [DE 34-1 ¶ 7] (emphasis added).[7]   However, conclusory statements in an affidavit are of no probative value.  *See McKenny v. United States*, 973 F.3d 1291, 1303 (11th Cir. 2020) ("[W]e have held that conclusory affidavits lack probative value."); *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value." (quoting *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985))).  Plaintiff's bare statement here is insufficient to establish a concrete injury.  *See Stringham v. 2921 Orlando Drive LLC*, No. 613-CV-1587-ORL-37KR, 2014 WL 2215769, at *2 (M.D. Fla. May 28, 2014) ("A laundry list of alleged barriers together with the barest allegation that Plaintiff either encountered some barrier *or* is a tester is simply insufficient to show an injury-in-fact, even under *Houston*.").  Moreover, Plaintiff's declaration is not only bare and conclusory but leaves the Court to guess as to what, if

---

[6] *Compare Nelson v. One Way Design, Inc.*, No. 14-62801-CIV, 2015 WL 3772268, at *2 (S.D. Fla. June 17, 2015) ("Plaintiff therefore 'only has standing . . . to challenge the alleged ADA violations he personally encountered." (citations omitted)), *with Campbell v. Grady's Bar, Inc.*, No. 0:10-CV-60648-LSC, 2010 WL 2754328, at *2 (S.D. Fla. July 12, 2010) ("Plaintiff may not be required to personally encounter *every* barrier listed in his Complaint to obtain injunctive relief, but the Complaint does not include any facts from which this Court can infer that Plaintiff could not fully enjoy Defendants' facilities, services, goods, and amenities because of his encounter with any of the barriers listed." (internal citations omitted)).

[7] Plaintiff also cites to the Complaint as evidence, but it is an unverified complaint that does not constitute evidence.  As noted above, the present standing challenge is a factual challenge, not a facial challenge that would be resolved based on the allegations of the Complaint.  Regardless, paragraph 7 of Plaintiff's declaration conveys the same content as paragraph 15 of the Complaint.

any, barriers he actually encountered or which ones he might merely have some other unexplained source of knowledge about. Plaintiff's use of "and/or" *could* mean that he has knowledge of the alleged barriers but that he did not personally encounter them, or it *could* mean the inverse. The declaration also fails to provide any detail or explanation as to how any of the alleged barriers prevented him from enjoying the facilities.

Plaintiff's deposition testimony fails to provide any further details or to fill in the gaps left by his declaration. Indeed, it only serves to reinforce the declaration's insufficiencies. At his deposition, Plaintiff was unable to remember any barriers he encountered when he visited the Property [T. 35]. Nor was he able to provide any details regarding how the barriers affected him or caused him injury. While Plaintiff states in his declaration that he wanted to buy gas and beverages when he visited the Property but was unable to due to the alleged barriers, even these limited facts are called into question by Plaintiff's deposition testimony, given that Plaintiff could not definitively recall any details whatsoever regarding his visit.[8] Although Plaintiff testified at one point that he went to the Property to buy gas [T. 21], he later testified that he "was there most likely to get gas" and that *maybe* he wanted to buy cigarettes or a drink, but he reiterated, over and

---

[8] Plaintiff's declaration is dated more than a year after his visit to the Property, but in the declaration, he purports to have recalled details of that visit (summarizing any such details in his declaration in an overly conclusory manner). Yet, merely two months later, at his deposition, he was unable to recall any specifics about his visit. If Plaintiff was truly able to recall details of his visit (including the barriers he supposedly encountered) when he signed his declaration fourteen months after he visited the Property, he certainly should have been able to recall such details at the time of his deposition. While it is perhaps possible that Plaintiff had memory issues when deposed, if that were the case, he should have taken some action to refresh his recollection after his deposition. After taking such action, Plaintiff should have, at a minimum, submitted a more detailed declaration regarding his visit to the Property and accounted for, or explained away, his inability to recall any such details at the time of his deposition. Plaintiff could have submitted such a declaration at any time before responding to Defendants' MSJ more than a month after his deposition. But he did not. Instead, Plaintiff chose to rely on his initial declaration to establish standing notwithstanding its deficiencies, which became especially pronounced as a result of his deposition testimony revealing he could not recall a single detail regarding his visit.

11

over again, "I don't remember the specifics of my visit. . . . I don't remember the specifics." [*E.g.*, T. 32-33].  His deposition testimony, thus, revealed nothing but conjecture.

In sum, the conclusory statement in Plaintiff's declaration that he encountered *and/or* has personal knowledge of the alleged barriers has no probative value and is insufficient on its own to show that Plaintiff actually encountered any of the alleged barriers.  Plaintiff's deposition testimony, expressing no memory of any of the barriers he encountered nor any of the details of Plaintiff's visit to the property, fails to provide sufficient evidence of injury either and indeed underscores the declaration's deficiencies.  Therefore, Plaintiff has not established any injury-in-fact and fails to satisfy his standing burden.

### B.  Threat of Future Injury

Plaintiff also failed to establish standing because he has not demonstrated a real and immediate threat of future injury.  When examining a threat of future injury for purposes of determining whether a Title III ADA plaintiff has standing, courts consider the totality of the circumstances, generally applying the following factors: "(a) proximity of the public accommodation to plaintiff's home; (b) plaintiff's past patronage of defendant's accommodation; (c) the definiteness of plaintiff's plan to return to defendant's accommodation; and (d) the frequency of plaintiff's travel near defendant's accommodation."  *E.g.*, *Bowman v. G.F.C.H. Enters., Inc.*, No. 14-22651-CIV, 2014 WL 5341883, at *2 (S.D. Fla. Oct. 20, 2014) (citing *Houston*, 733 F.3d at 1336-37 & n.6).  These factors, however, are not exclusive, and no factor is dispositive on its own.  *Houston*, 733 F.3d at 1337 n.6.  Importantly, determining whether a plaintiff has standing to seek injunctive relief entails a fact-sensitive inquiry.  *Id.* at 1340.

The Eleventh Circuit's decision in *Houston* is particularly instructive on the threat-of-future-injury inquiry because *Houston* is a recent binding Title III ADA case that addresses many

of the disputed issues present here.  As here, *Houston* considered a factual challenge to standing.

The Eleventh Circuit held that the plaintiff, Houston, had standing based upon the specific facts of

the case.  *Id.* at 1325, 1335-40.  The court found the relevant facts, including the following, to be

undisputed: "(1) Houston's two prior visits to the Presidente Supermarket [the property at issue],

(2) his proximity to the store, (3) his averments as to future visits, and (4) that Houston is an ADA

tester who has filed many similar lawsuits."  *Id.* at 1336.[9]

      With respect to the two prior visits to the supermarket and Houston's averments regarding

future visits, Houston submitted an affidavit detailing his visits to the supermarket and his plans

to return.  *Id.* at 1327.  He disclosed two specific dates on which he shopped at the supermarket,

providing a receipt from his second visit, and he attested to shopping at other locations of the same

supermarket numerous times over the prior decade, indicating that he did so because he liked

Spanish food and because the supermarket carried certain items not carried at other supermarkets.

*Id.*  Houston also noted that he did not necessarily shop at the market closest to his home; instead,

where he shopped depended on what he was doing and where he was.  *Id.*  Houston's affidavit

further explained that the subject property was only 1.8 miles away from his attorney's office and

that he passed the market on his usual route to his attorney's office.  *Id.*  He said he travelled there

regularly and expected to be there in the future.  *Id.*  Additionally, Houston swore he would return

to the market if the barriers affecting him were remedied.  *See id.*

      In evaluating the facts regarding Houston's prior visits, the court initially recognized that

> [w]hile "past wrongs do not in themselves amount to that real and immediate threat
> of injury necessary to make out a case or controversy," the plaintiff's exposure to
> illegal conduct in the past is nonetheless "evidence bearing on whether there is a

---

[9] The Eleventh Circuit declared that Houston's status as a tester did not foreclose standing.  *Id.* at 1334.  Nor did his status as a tester establish standing.  Instead, the Eleventh Circuit confirmed that anyone attempting to establish standing, whether a regular customer or a tester, "must establish standing on the facts of the case before the court."  *Id.* at 1340.

> real and immediate threat of repeated injury." . . . "[A] plaintiff seeking an
> injunction under Title III either must "have attempted to return" to the non-
> compliant building or at least "intend to do so in the future."

*Id.* at 1336 (internal citations omitted).  The court then noted that Houston encountered the alleged

barriers both times, observing that he "did, in fact, return to the Presidente Supermarket before

filing this lawsuit, even after he had faced the alleged barriers during his first visit."  *Id.*

As to the issue of Houston's proximity to the supermarket, Houston lived in Broward

County, approximately 30.5 miles away from the subject property, which was located in Miami-

Dade County (the county immediately south of Broward County).  *Id.* at 1327.  Though noting that

the market was "not the closest" to Houston's home, the court found that the distance issue alone

did not make the threat of future injury conjectural in light of the totality of the undisputed facts.

*Id.* at 1336.  It specifically considered Houston's averments as to both past and future visits, which

evidenced his regular visits to the area and the fact that Houston passed the market on his way to

and from his attorney's office, which he "definitely" anticipated visiting "in the near future" on

account of "his many ADA lawsuits."  *Id.*  Based on these averments, the court found that Houston

drove by the supermarket frequently and that he wanted to visit the supermarket when travelling

to his lawyer's office in the near future.  *Id.* at 1340.  Ultimately, the court determined that

Houston's averments demonstrated "a concrete and realistic plan of when he would visit the store

again."  *Id.*

The undisputed facts in this case, though sharing some similarities with those in *Houston*,

are far less supportive of finding that Plaintiff has standing when viewed in their totality.  First,

the facts concerning Plaintiff's past patronage weigh against standing.  Plaintiff's declaration [DE

34-1] only evidences one prior visit to the Property around June 2019.  His deposition testimony

indicates it is possible he visited the Property on more than one occasion, but it does not establish

any other visits [*see* T. 20-21].  Thus, unlike the evidence in *Houston*, the evidence before the Court in this case only establishes one prior visit.  *See Kennedy v. Solano*, 735 F. App'x 653, 655 (11th Cir. 2018) ("Kennedy's past patronage of the Sunset Café does not weigh in her favor because at the time she initiated this action, she had only patronized the café once.").  Moreover, as discussed in the preceding section, Plaintiff has completely failed to establish any specific facts regarding his prior visit to the Property, whereas the plaintiff in *Houston* provided details regarding his visits as well as a receipt from one visit.

Second, the distance between Plaintiff's home and the Property (approximately 30 minutes) is comparable to the 30.5-mile distance at issue in *Houston*.  Both Plaintiff and the plaintiff in *Houston* were located one county over from the subject property.  As in *Houston*, this factor does not strongly support or weigh against a finding of standing.  A distance of 30.5 miles is not so far as to make future visits highly unlikely or conjectural, but it does not suggest a high probability either.  Third, the definiteness of Plaintiff's plans to return to the Property, though arguably supported by some facts, are far less definite than the plaintiff's plans in *Houston*. Relatedly, the same facts, which bear on Plaintiff's frequency of travel near the Property (the fourth factor), are not as developed as the facts demonstrating such frequency in *Houston*.

With respect to the final two factors, Plaintiff generally states in his declaration that he plans to return to the Property within six months and to frequent it if made accessible [DE 34-1 ¶ 8].  He notes that he frequently visits the area because he goes to the nearby Hard Rock Casino to have dinner and socialize [*Id.* ¶ 9].  He then concludes by generally stating he will also return to the Property to monitor compliance with the ADA [*Id.* ¶ 10].  As to the generalized statements in paragraphs 8 and 10 of his declaration, they are plainly conclusory statements lacking probative value.  If filing an affidavit with such boilerplate statements were sufficient to establish a threat of

15

future injury in the face of a factual challenge to standing, then it would be the simplest of tasks for any Title III ADA Plaintiff to establish standing under any set of factual circumstances. Paragraph 9 of Plaintiff's declaration regarding the Hard Rock connection, slightly moves the needle for Plaintiff. Nevertheless, the inclusion of this one simple fact pales in comparison to the facts adduced in *Houston*. In *Houston*, it was evident, from the totality of the facts, that the plaintiff needed to, and regularly did, visit his attorney's office, and that he wanted to return to the specific market involved for particular reasons, which he demonstrated he passed when he went to and from his attorney's office. Here, however, Plaintiff offers no indication as to how frequently or regularly he does in fact go to the Hard Rock and what it is about this Property that is likely to attract his attention (such as being on his route to the Hard Rock or carrying some product that he is unable to find at other gas stations).

Furthermore, even if Plaintiff's declaration could, on its own, arguably establish a threat of future injury, his deposition testimony again undermines it. When asked when he next planned to visit the area, Plaintiff stated, "I don't have a specific date. Soon." [T. 60]. The testimony that followed is even more significant. Specifically, Plaintiff testified that he has never gone from his home to visit the Property and that it is merely "one possibility" that he will do so in the future [T. 63]. He also remarked that "[i]t is difficult to ascertain what the future - -" [T. 63]. His testimony clearly reveals that his plans to return to the Property are anything but definite. *Cf. Cape Siesta Motel*, 2018 WL 4822479, at *4 ("Plaintiff's boilerplate language, broad statements of intent, and contradictions undercut the argument that she will likely return. She has no standing." (footnote omitted)). In other words, Plaintiff has no concrete and realistic plan of when he will visit the Property again. Moreover, as noted above, the details regarding the frequency of his travel in the area are not nearly as developed as the related facts in *Houston*, which showed that the plaintiff

there definitively planned to return to the area in the near future.  Accordingly, the third factor strongly weighs against finding standing, and the fourth factor, at least to a certain degree, also weighs against finding standing.

Notably, in the ADA standing context, the Eleventh Circuit "has focused on the frequency of the plaintiff's visits to the defendant's business and the definitiveness of the plaintiff's plan to return." *Kennedy v. Beachside Com. Props., LLC*, 732 F. App'x 817, 820 (11th Cir. 2018) (quoting *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 832 (11th Cir. 2017)).  Significantly, as is evident from the discussion above, it is these two factors that most strongly weigh against standing in this case.

For the foregoing reasons, the totality of the facts demonstrate that Plaintiff has failed to establish the threat of a future injury.  The two most significant factors (frequency of prior visits and definiteness of future plans) weigh strongly against Plaintiff, a third factor (frequency of travel near the Property) weighs at least slightly against Plaintiff, and the remaining factor (distance from home) is neutral at best.   Therefore, I recommend that this case be dismissed without prejudice for lack of standing.

**II.      WHETHER REMOVAL OF BARRIERS IS READILY ACHIEVABLE**

Even if this Court were to determine that Plaintiff has standing, Defendants' MSJ should still be granted because Plaintiff has failed to satisfy his initial burden of showing proposed removal methods that are readily achievable (assuming the alleged barriers exist).  "The term 'readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).  Determining whether an action is readily achievable requires consideration of various factors including the following:

(A) the nature and cost of the action needed . . .;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Id. See also Gathright-Dietrich*, 452 F.3d at 1273 (listing the same factors as ten separate factors).

As noted above, Plaintiff has the initial burden of showing not only the existence of a barrier but also that removal is "readily achievable." *Omegagas & Oil*, 748 F. App'x at 893. While the ultimate burden of showing that barrier removal is not "readily achievable" rests with Defendants *if* Plaintiff meets his initial burden, "[P]laintiff's initial burden is not light." *Id.* Significantly, "[P]laintiff must present sufficient evidence so that [Defendants] can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility. Without evidence on these issues, [Defendants] cannot determine if [they] can meet [their] subsequent burden of persuasion." *Id.* (quoting *Gathright-Dietrich*, 452 F.3d at 1274).

Plaintiff's problem is that he has not presented any evidence to show that removal is readily achievable even though he will have the initial burden to do so at trial. He has not even provided evidence regarding any proposed solutions at all. Instead, Plaintiff argues that his expert's declaration is sufficient to satisfy his burden on the "readily achievable" issue and that removal of the alleged barriers is readily achievable according to the ADA Title III Technical Assistance Manual ("Manual") maintained by the Department of Justice (available at https://www.ada.gov/taman3.html). With respect to Plaintiff's expert's declaration (and attached

18

report), it merely identifies the alleged barriers.  It does not propose solutions.  Moreover, while Plaintiff's expert states that "[i]t is [his] opinion that the modifications necessary to correct the ADA violations can be made without much difficulty or expense," [DE 22-1 at p. 3], Plaintiff's expert fails to explain the factual basis for the opinion in any manner whatsoever.  Notably, Plaintiff does not dispute (nor could he reasonably dispute), for purposes of Defendants' MSJ, that "Plaintiff's purported expert report contains no opinion for the cost to remove the alleged barriers, no opinion on a design for the removal of the alleged barriers, and no opinion regarding the effect of the barrier removal on the finances and operation of the facility." [DE 57 ¶ 4; DE 72 ¶ 4].  In short, Plaintiff's expert provides, at best, a conclusory opinion that is neither probative nor helpful.

The Manual does not provide sufficient evidence to satisfy Plaintiff's burden either. Although Plaintiff does not reference a specific section of the Manual, it is clear he is referring to section III-4.4200, which provides, in pertinent part, that "[t]he Department's regulation contains a list of 21 examples of modifications that *may* be readily achievable," including "[c]reating designated accessible parking spaces" (emphasis added).[10]  But Plaintiff completely ignores the word "may" and other important language indicating that while the examples listed are often ready achievable, that is not universally true.  On the contrary, the Manual makes clear that there is "no definitive answer" to what barriers it is readily achievable to remove, noting that "determinations as to which barriers can be removed without much difficulty or expense must be made on a case-by-case basis."  The Manual further provides that the list of twenty-one examples "is intended to be illustrative" and that the examples listed "will be readily achievable in many instances, but not

---

[10] Plaintiff also notes that other examples listed include "[i]nstalling ramps" and "[i]nstalling accessible door hardware," but Plaintiff fails to explain the relevance of these examples to the alleged barriers.

in all." Moreover, the applicable section of the Manual does not appear to address all of the alleged barriers at issue here (such as number 11, which relates to the main service counter).

In responding to Defendants' MSJ, and in replying to Defendants' response to Plaintiff's MSJ, Plaintiff also argues that removal of barriers is readily achievable because 7-Eleven's parent company has annual operating income of over $1 billion. This argument is not properly before the Court for consideration, but even if it were, it does not change the outcome.[11]

Even if accepted as an undisputed fact and considered, the operating income of 7-Eleven's parent company is insufficient on its own to satisfy Plaintiff's initial burden of showing that removal of barriers is readily achievable. The limited evidence presented by Plaintiff does not put forth any proposed solution, does not bear on the difficulty of accomplishing any solution, does

---

[11] As an initial matter, the argument regarding the parent company's operating income cannot be considered in connection with Plaintiff's MSJ because it was not raised therein; it was only raised in Plaintiff's Reply [DE 77]. *See Friedman v. Schiano*, 777 F. App'x 324, 332 n.13 (11th Cir. 2019) ("It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief." (quoting *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987))); *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court." (citation omitted)).

I also find that it is inappropriate to take judicial notice of Financial Results Presentation [DE 79-12], which is the sole manner through which Plaintiff attempts to place the operating income figure before the Court. Specifically, Plaintiff has filed a Motion for Judicial Notice [DE 79], requesting that the Court take judicial notice of the Financial Results Presentation and 11 permit applications for the Property. But the operating income figure, which Plaintiff states is within the Financial Results Presentation, does not qualify as something "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, the Financial Results Presentation is not a "source whose accuracy cannot reasonably be questioned." Nevertheless, because Plaintiff still cannot prevail on the readily-achievable issue even if the Court does take judicial notice (for the reasons discussed herein), I recommend that the Motion for Judicial Notice be denied as moot with respect to the Financial Results Presentation. In fact, I recommend that the Motion for Judicial Notice be denied as moot in its entirety because the only other issue, concerning the permits, only applies to whether the alleged barriers exist, something that is not necessary to reach given Plaintiff's failure to establish standing and to satisfy his initial burden of showing that removal of the alleged barriers is readily achievable.

not address cost implementation, and does not address the economic operation of the Property. To address the specific factors referenced above, Plaintiff has offered no evidence regarding the nature and cost of any action needed, the overall financial resources of the specific facility involved, the number of persons employed at the facility, the effect or impact on the expenses, resources, or operation of the facility, the overall size of the business of a covered entity with respect to the number of its employees, the number and location of its facilities, the composition, structure, and functions of the workforce of the covered entity, or the geographic separateness, administrative, or fiscal relationship of the facility in question to the covered entity. Nor has Plaintiff provided evidence regarding the overall financial resources of the covered entity, instead only attempting to address the operating income of 7-Eleven's parent company. What Plaintiff does is akin to arguing that any single office location of any large corporation or well-funded entity can afford to spend some unknown amount of money to remedy any *potentially* inexpensive issue because that entity has access to substantial funds. Thus, even if the Court could and did take judicial notice of the annual operating income of 7-Eleven's parent company pursuant to Plaintiff's request, Plaintiff still would not satisfy his initial burden of showing that removal of alleged barriers is readily achievable. He has not provided any evidence to show that any of the applicable factors can be satisfied.

For the foregoing reasons, Defendants have shown that Plaintiff has failed to present evidence to support an essential element of his case.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court:

1.     **GRANT** Defendants' MSJ [DE 56];

2.     **DENY** Plaintiff's MSJ [DE 59];

3.      **DISMISS** this case **without prejudice** for lack of standing, or alternatively, enter summary judgment in favor of Defendants in light of Plaintiff's failure to provide evidence to satisfy his initial burden of showing that removal of the alleged architectural barriers is readily achievable; and

4.      **DENY** Plaintiff's Motion for Judicial Notice [DE 79] **as moot**. *See supra* note 11.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 31st day of December 2020.

Jared M. Strauss
**United States Magistrate Judge**

22